# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
## NASHVILLE DIVISION

ANTHONY DEWIGHT       )
WASHINGTON,          )
                               )
      Petitioner,        )     **NO. 3:17-cv-00263**
                               )     **CHIEF JUDGE CRENSHAW**
v.                     )
                               )
STATE OF TENNESSEE, Warden   )
                               )
      Respondent.       )

## MEMORANDUM OPINION

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Petitioner Anthony Dewight Washington is serving a term of 30 years' imprisonment imposed by the Davidson County Criminal Court on October 7, 2011, after a jury convicted him of possession with intent to sell or deliver 0.5 grams of cocaine within a drug free zone, possession of marijuana and possession of drug paraphernalia. (Doc. No. 1 at Page ID# 1.) Respondent has filed an answer to the petition (Doc. No. 16) stating that the grounds should be denied because they are procedurally defaulted and without merit.

The matter is ripe for review and the court has jurisdiction. 28 U.S.C. § 2241(d). Respondent does not dispute that Petitioner's federal habeas petition is timely. (Doc. No. 14 at Page ID# 954.) Respondent states that the federal habeas petition at issue here appears to be Petitioner's first application for federal habeas relief. (Id.)

Because a federal court must presume the correctness of a state court's factual findings unless the petitioner rebuts this presumption with 'clear and convincing evidence," 28 U.S.C. § 2254(e)(1), and because the issues presented can be resolved with reference to the state-court record, the court finds that an evidentiary hearing is not necessary. See Schriro v. Landrigan,

550 U.S. 464, 474 (2007) (holding that if the record refutes a petitioner's factual allegations or otherwise precludes habeas relief, the district court is not required to hold an evidentiary hearing (citing Totten v. Merkle, 137 F.3d 1172, 1176 (9th Cir. 1998))).  Upon review and applying the AEDPA standards, the Court finds that Petitioner is not entitled to relief on the grounds asserted. Accordingly, the petition will be denied and this matter dismissed.

I.    **PROCEDURAL BACKGROUND**

The state prosecution arose from the execution of a search warrant at the Petitioner's residence in the early morning hours of May 14, 2010.  On July 30, 2010, Petitioner was indicted by the Davidson County Grand Jury and charged with one count of possession with intent to sell or deliver 0.5 grams of cocaine within a drug free zone, one count of possession of marijuana and one count of possession of drug paraphernalia.  (Doc. No. 15-1 at Page ID## 68-73.) Petitioner was tried before a jury on August 15, 2011.  (Doc. No. 15-1 at Page ID# 94; see also Doc. No. 15-2.)  On August, 16, 2011, the jury found Petitioner guilty as charged.  (Doc. No. 15-1 at Page ID# 94.)  Following a sentencing hearing conducted on October 7, 2011, Petitioner was found to be a range-three persistent offender with 45% release eligibility, except that Petitioner was required to serve the first 20 years at 100% as a result of the Drug Free Zone law.  (Doc. No. 15-4; *see also* Doc. 15-13 at Page ID# 515.)

Petitioner appealed his judgment of conviction to the Tennessee Court of Criminal Appeals ("TCCA"), which rejected all appellate arguments, and affirmed Petitioner's conviction and sentence in an unpublished opinion issued on December 10, 2012.  (Doc. No. 15-9; see also State v. Anthony Dewight Washington, No. M2011-02678-CCA-R3-CD; 2012 WL 6115589, at *1 (Tenn. Crim. App. Dec. 10, 2012) [Washington I].)  Petitioner filed an application for

permission to appeal to the Tennessee Supreme Court, which was denied on March 5, 2013. (Doc. No. 15-12; see also Washington I, 2012 WL 6115589 at *1.) [1]

On May 20, 2013, Petitioner timely filed a petition for post-conviction relief in the Davidson County Criminal Court. (Doc. No. 15-13 at Page ID## 424-57.) On September 9, 2013, the trial court appointed counsel. (Id. at Page ID## 494-96.) Thereafter, the trial court held status hearings approximately every 30 days. Having concluded that appointed counsel had not taken any action on Petitioner's behalf, on January 13, 2015, the trial court appointed new counsel. (Id. at Page ID## 497-99.) On May 8, 2015, counsel filed an amended and supplemental petition for post-conviction relief. (Id. at Page ID## 500-10.) The matter was heard in the trial court on May 27, 2015, and on November 24, 2015, the court issued an order denying relief. (Doc. No. 15-13 at Page ID## 513-34.)

Petitioner appealed to the TCCA, which denied relief on September 22, 2016. (Doc. No. 15-19; see also Anthony Dewight Washington v. State, No. M2015-02309-CCA-R3-PC, 2016 WL 5266620, at *1 (Tenn. Crim. App. Sept. 22, 2016) [Washington II].) Petitioner filed an application for permission to the appeal to the Tennessee Supreme Court, which was denied on December 15, 2016. (Doc. No. 15-23; see also Washington II, 2016 WL 5266620, at *1.)

## II.    STATEMENT OF FACTS

The TCCA summarized the facts presented at trial as follows:

> At the trial, David Kline of the Metropolitan Nashville Planning Department testified that his office was responsible for preparing maps for various governmental uses. He identified an aerial photograph depicting

---

[1] In Tennessee, review by the state Supreme Court is not required for exhaustion. Instead, "once the Court of Criminal Appeals has denied a claim of error, 'the litigant shall be deemed to have exhausted all available state remedies available for that claim.'" Adams v. Holland, 330 F.3d 398, 402 (6th Cir. 2003) (quoting Tenn. S. Ct. R. 39).

Bordeaux Gardens Park and its vicinity. The photograph contained computer-generated lines marking the park's boundaries and other lines marking the distance of 1000' from the park's boundaries. On cross-examination, he acknowledged that he would recognize visually if the 1000' line was off by 500' but that he would not recognize a five-foot variance. He said there was no calibration of the computer to ensure its accuracy in determining the 1000' measurement.

Metro Nashville Police Officer Byron Carter testified that on May 14, 2010, he and several other officers executed a search warrant at a house at 3244 Crow Drive. He marked the address on the aerial photograph, which showed the residence was within the 1000' border surrounding Bordeaux Gardens Park. He said the warrant permitted a search of the house, vehicles, and people at the residence. He said that a metal storm door was closed but a wood door was open and that he saw the Defendant inside. He said that the Defendant closed the wood door and ran. He said the police entered forcibly after trying to open the door and discovering it was locked. He said that before forcing open the door, they knocked and announced that they were police officers. He said that patrol car blue lights were activated in front of the house and that a loud speaker was used to announce that the police were there to execute a search warrant. He said that when they entered the home, the Defendant and a woman stood about five feet from the door. The Defendant's mother was upstairs.

Officer Carter testified that Officer Grindstaff searched the Defendant and found a clear bag containing a white rock weighing 5.7 grams in the Defendant's right front pants pocket. The rock field tested positive for cocaine. Officer Grindstaff also found a clear bag of white powder in the pocket. The powder weighed one and one-half grams and field tested positive for cocaine. Officer Carter said the weights were approximate. He said that a marijuana grinder and a "blunt" splitter were found upstairs where the Defendant's mother was. He said there was marijuana residue inside the grinder. He said Officer Grindstaff found a clear bag of marijuana and a black digital scale with white residue inside the console of a Hummer H3 in the driveway. He said the white residue field tested positive for cocaine. He identified photographs of the items found. He also identified as exhibits the bag containing the rock, the bag containing the powder, the bag containing the marijuana, the marijuana grinder, the blunt splitter, and the scale. He said no crack pipe was recovered during the search.

Officer Carter testified that he recorded a conversation with the Defendant. He did not think the Defendant knew the conversation was recorded. He said that he advised the Defendant of his rights and that the Defendant agreed to talk to him. The recording was played for the jury. In it, Officer

Carter inquired whether the marijuana in the Hummer belonged to the Defendant. He told the Defendant he knew that either the Defendant or the Defendant's mother drove the Hummer. When asked whether Officer Carter should charge the Defendant or the Defendant's mother for the marijuana, the Defendant replied that he should be charged. The Defendant also said he should be charged for the marijuana grinder. The Defendant claimed he drove a Jeep Cherokee to pick up an unidentified woman and said he moved the Hummer to park the Cherokee in front of it. The Defendant asked where the marijuana grinder and blunt splitter were found, and Officer Carter said, "Table right in front of her." The Defendant offered to "give" the police a person called "Trouble." When asked about a gun, the Defendant denied having one. Officer Carter asked which car he should seize, the Hummer or the Cherokee. Officer Carter said he would have to seize both cars unless the Defendant told him which was used to transport drugs. Officer Carter said he told the Defendant he saw the Defendant driving the Hummer the previous day. Officer Carter said the Defendant's mother denied any knowledge of the drugs in the Hummer. When asked about buying drugs from Trouble, the Defendant said he purchased an "eight ball" or four grams of rock cocaine at a time. When asked if he cooked cocaine to make it hard, the Defendant said it was cooked when he bought it and that he just bagged it.

Officer Carter testified that he sometimes said things that were not true when interviewing suspects in order to get information. He said he had not actually seen the Defendant drive the Hummer the previous day. He said an eight ball referred to one-eighth of one ounce or 3.5 grams of cocaine. He said that powder cocaine was sometimes cooked in a pan or microwave to make crack cocaine. He said the Defendant had a microwave in the basement. Officer Carter said Officer Grindstaff was unavailable to testify due to SWAT training.

On cross-examination, Officer Carter testified that the drugs were weighed at the scene with their bags. He said the bag containing rock cocaine had more than one rock but that there were not individual bags for each rock. He said the Defendant claimed to be employed. Officer Carter thought that both cars were registered to the Defendant's mother. He agreed that the Defendant lived in the basement and that the Defendant's mother lived upstairs.

Detective Atif Williams testified that he was part of the team that executed the search warrant on May 14, 2010. He said that as they approached the door, the Defendant saw them and slammed the door. He was present when Detective Grindstaff took a bag of crack cocaine and a bag of powder cocaine from the Defendant's pocket. He did not recall recovering a crack pipe. On cross-examination, Detective Williams stated that he was not

involved in searching the entire house but that other officers did. He said that if there was a crack pipe, it was not found and that it was possible they missed finding it. He was not aware of a gun being found in the house.

Tennessee Bureau of Investigation (TBI) Special Agent John Scott, a forensic chemistry expert, testified that he examined the evidence submitted for testing in this case. He said that the rock-like substance weighed 3.9 grams and was cocaine base. The white powder weighed seven-tenths of one gram and was cocaine. The plant-like material from two sources had a combined weight of 3.6 grams and was marijuana.

Metro Nashville Police Lieutenant William MacKall testified that he had been a police officer for twenty-one years and had worked in narcotics crimes for about sixteen and one-half years. He said he had investigated both buyers and sellers of narcotics. He was familiar with the manufacturing, packaging, pricing, and use of narcotics. He said that crack cocaine was made by mixing it with a substance such as baking soda and cooking it to remove impurities until it reached a rock form. He said the rock was usually broken into smaller pieces by the person who cooked it and further broken into smaller pieces as it went down the drug distribution network.

Lieutenant MacKall testified that he made street-level purchases of crack cocaine hundreds of times and that a typical purchase for personal use was two-tenths of one gram for $20. He said this quantity was smaller than an eraser head. He said it would be smoked with a crack pipe consisting of a glass stem with a filter on one end, although other items such as miniature wine bottles, soda cans, and car antennas might be used.

Lieutenant MacKall testified that he was not involved in the present case except that he reviewed the evidence at the prosecutor's request. With respect to the exhibit of the bag containing several rocks of crack cocaine, he said that there were some rocks with a street value of $10 to $30. The value of 3.9 grams was $200 to $400. He said he had purchased crack cocaine for $20 both individually bagged and taken from a bag containing multiple rocks. He said the powder cocaine would sell for about $70. He said that digital scales were used to weigh drugs and that he had never known a purchaser to have scales. He said that when he arrested a crack cocaine user, the person typically possessed a glass pipe. He said that crack cocaine users were typically so addicted that they smoked it immediately when they bought it and that it would be unusual for such a person to keep crack cocaine in his or her possession. He said that the longer a person used crack cocaine, the less likely he or she would hold a job. He said it was typical to ask a street-level dealer to identify the person from whom they obtained drugs because the police always tried to get the "bigger fish."

On cross-examination, Lieutenant MacKall testified that he could not "see" a drug user buying large amounts of drugs from a street-level dealer. He said that rocks of crack cocaine and portions of powder cocaine were sometimes individually packaged. He said it was common for drug users who were arrested to want to identify the source of the drugs or to want to work as a confidential informant. He said the amount of crack cocaine involved in this case would have been a "good sized" rock had it not been broken and agreed it would not necessarily fit into a crack pipe. He said that larger amounts of drugs could be smoked with a soda can or a miniature liquor bottle. He was unaware of any such items being found during the search. He said that at least one other person was in the house and acknowledged it was possible the drugs had been shared between individuals. He said that in his experience, people made powder cocaine into crack cocaine in order to increase its potency. He agreed that it was possible for three people to smoke 3.9 grams of crack cocaine in a weekend but said that every drug user he ever had contact with used drugs as soon as they obtained them.

The Defendant did not offer proof.

Washington I, 2012 WL 6115589, at *1–4.

The TCCA summarized the evidence presented at the post-conviction evidentiary hearing, in pertinent part, as follows:

At the post-conviction hearing, the Petitioner testified that trial counsel was appointed after he was indicted in 2010. At his first court appearance, the Petitioner met with trial counsel, and she informed the Petitioner of the State's plea offer of a twenty-year sentence with a 35% release eligibility. At that time, the Petitioner asked trial counsel to file a motion to suppress, to which she responded that "a judge will not overturn another judge." Additionally, the Petitioner asked trial counsel to file a motion asking the trial court judge to recuse herself because the Petitioner had been found guilty and sentenced by that judge before. The Petitioner testified that trial counsel did not file either motion that he requested. At the Petitioner's second court appearance, he again asked trial counsel to file a motion to suppress all evidence found during the search of his residence on the grounds that the search lacked probable cause. At his third court appearance, the Petitioner attempted to remove trial counsel from his case. The Petitioner testified that he never went to trial counsel's office during the representation and that trial counsel only discussed the case with him on the Friday before trial. On that court date, the Petitioner attempted to hire a new attorney, but the trial court would not let him replace trial counsel because the trial was scheduled to begin the following Monday. The

Petitioner stated that he first received his discovery at that court appearance and that he discussed with trial counsel subpoenaing the confidential informant and the Petitioner's girlfriend as defense witnesses. The Petitioner testified that trial counsel's only defense strategy was to ask the jury to convict the Petitioner of a lesser included offense of simple possession.

Additionally, the Petitioner testified that trial counsel had received a letter from the State notifying her that the Petitioner could receive a thirty-year sentence, but counsel never showed that letter to the Petitioner. The Petitioner stated that trial counsel informed him that he would be sentenced as a Range II multiple offender. The Petitioner stated that, if he had known what sentence he was facing, he probably would have accepted the State's plea offer. The Petitioner also stated that he attempted to contact trial counsel to discuss issues to be raised in the motion for new trial but that she never responded to his letters until after the motion was denied. Additionally, the Petitioner asserted that he suggested some cases for trial counsel to include in his direct appeal, but she never responded to his communication. The Petitioner testified that he filed several motions to dismiss trial counsel as his appointed attorney throughout her representation but that the motions were always denied.

On cross-examination, the Petitioner agreed that he had previously pled guilty to ten felonies and thirty-seven misdemeanors and that he had approximately ten court appearances before the trial began in the current case. The Petitioner also agreed that the State had offered a plea deal "early on" in the case, which he rejected after trial counsel explained the offer. The Petitioner stated that he received the discovery in his case on the Friday before his first trial date, and when his trial was continued, he met with trial counsel several more times to discuss the case, including the trial strategy of arguing for a conviction on the lesser included offense of simple possession.

The post-conviction court then questioned the Petitioner, who testified that he wanted the trial judge to recuse herself because she had sentenced him in an earlier case. Additionally, the Petitioner clarified that he believed the warrant to search his home lacked probable cause because the police lacked physical evidence of a drug sale.

Trial counsel testified that she has been practicing law since 2008 and that almost all of her practice was criminal defense. Trial counsel stated that she was appointed to the Petitioner's case at the Petitioner's arraignment. After her appointment, trial counsel filed a motion to reduce the Petitioner's bond, which was not heard because the Petitioner had already made bond. Next, counsel filed a motion for discovery. Trial counsel testified that she met with the Petitioner at every court date and that she "asked him many times,

in fact, almost to the point of begging to come to [her] office" to review discovery and prepare for trial, but the Petitioner instead ignored her or asked her to end the representation. Trial counsel stated that she discussed the State's plea offer with the Petitioner, particularly the fact that the Petitioner was a Range III offender and how ranges are calculated. Counsel also explained "the nature of a drug[-]free zone charge" and how that affected the Petitioner's case.

Further, trial counsel stated that she discussed trial strategy with the Petitioner, including what evidence would likely be admitted and the strength of that evidence. Trial counsel testified that she decided not to call the confidential informant as a witness because the informant would have likely testified that the Petitioner sold drugs to him, and because the Petitioner was not charged with a sale, it was unwise to open the door to that testimony. Trial counsel also stated that she did not file a motion to suppress evidence from the search because she did not see a basis for the motion. Additionally, she did not file a motion to recuse because she "never found any basis for it," but she did file six motions in limine. Trial counsel continued to represent the Petitioner on appeal because she believed the "judge wanted [her] to stay on the appeal rather than have the new attorney take over" and because the appellate court could not determine indigency and would not have entertained a motion to withdraw.

On cross-examination, trial counsel testified that she did not file a motion to withdraw prior to trial because "that request was heard orally several times." Trial counsel testified that she listened to the recording of the Petitioner's preliminary hearing in Davidson County General Sessions Court but did not remember the contents of the recording. She stated she normally has preliminary hearings transcribed but did not in the Petitioner's case because she "just listened to it and didn't think it was necessary." Trial counsel also explained that she did not file a motion to compel the identity of the confidential informant because the Petitioner believed he knew the identity of the informant, the informant's testimony would likely have been harmful to the Petitioner's case, and it was unlikely that the State would have disclosed the informant's identity until just before trial. Trial counsel testified that she interviewed the Petitioner's girlfriend, "Rica," but did not call her as a witness because trial counsel did not find her credible and "it seemed like a blatant attempt to get her to commit perjury."

Trial counsel testified that she discussed the motion for new trial with the Petitioner before she filed it and that she included the issues that the Petitioner raised, specifically the sufficiency of the evidence and the Petitioner's sentence. Trial counsel stated that she did not send a draft of her appellate brief to the Petitioner for him to review before she filed it but

did correspond with the Petitioner by mail while she was preparing the appeal.

Following the hearing, the post-conviction court denied the Petitioner's request for post-conviction relief. The post-conviction court found that, "even considering only [the] Petitioner's testimony, [the] Petitioner has failed to establish by clear and convincing evidence that [trial counsel] neglected her duty of keeping him informed of his proceedings." Further, the trial court found trial counsel's testimony regarding her discussions with the Petitioner credible, including the discussions about possible defenses, trial strategy, the Petitioner's possible sentence at trial, and evidence. The post-conviction court found that there was "no legal basis for suppression" of the evidence found in the Petitioner's home and that trial counsel's testimony regarding her review of the search warrant to be credible. Finally, the post-conviction court found that the "Petitioner articulated no cognizable basis at the evidentiary hearing to relieve [trial counsel] from handling his appeal" or at trial and found counsel's testimony regarding her decision to not withdraw credible.

<u>Washington II</u>, 2016 WL 5266620, at *3–5

## III.   <u>ISSUES PRESENTED FOR REVIEW</u>

In his *pro se* petition, Petitioner raises the following claims:

1. Ineffective Assistance of Trial Counsel for:

    a. Failing to File a Motion to Suppress

    b. Failing to Request a Copy of the Second CD and Failing to File a Motion to Impeach the Confidential Informant.

    c. Failing to File a Motion to Recuse the Trial Judge

    d. Failing to Thoroughly Investigate the Petitioner's Case

    e. Failing to Request a Jury Instruction on Facilitation as a Lesser Included Offense

    f. Failing to Attack the Validity of the Indictment

2. Insufficiency of the Evidence

3. The Trial Court erred in Sentencing the Petitioner

      4.  The Cumulative Error Caused by Trial Counsel's Ineffective Assistance Prejudiced Petitioner

(ECF No. 1.)

## IV.   **STANDARD OF REVIEW**

This matter is governed by the provisions of the Antiterrorism and Effective Death Penalty Act, Pub. L. No. 104-132, 110 Stat. 1214 ("AEDPA"). See Penry v. Johnson, 532 U.S. 782, 792 (2001). AEDPA "dictates a highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt." Bell v. Cone, 543 U.S. 447, 455 (2005) (citations omitted); see Hardy v. Cross, 565 U.S. 65, 66 (2011); Felkner v. Jackson, 562 U.S. 594, 597 (2011). "AEDPA requires heightened respect for state court factual and legal determinations." Lundgren v. Mitchell, 440 F.3d 754, 762 (6th Cir. 2006). "State-court factual findings . . . are presumed correct; the petitioner has the burden of rebutting the presumption by clear and convincing evidence." Davis v. Ayala, 135 S. Ct. 2187, 2199-2200 (2015) (citations and internal quotations omitted).

If a state court adjudicated the claim, deferential AEDPA standards must be applied. 28 U.S.C. § 2254(d); see Premo v. Moore, 562 U.S. 115, 121 (2011); Waddington v. Sarausad, 555 U.S. 179, 190 (2009). AEDPA prevents federal habeas "retrials" and "ensure[s] that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002). It prohibits "using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." Parker v. Matthews, 567 U.S. 37, 38 (2012).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. Williams v. Taylor, 529 U.S. 362, 412 (2000); Bailey v.

Mitchell, 271 F.3d 652, 655 (6th Cir. 2001). In determining whether federal law is clearly established, this court may not rely on the decisions of lower federal courts. Lopez v, Smith, 135 S. Ct.1, 4 (2014); Harris v. Stovall, 212 F.3d 940, 943-44 (6th Cir. 2000). Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. Greene v. Fisher, 565 U.S. 34, 39 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Tennessee state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. Miller v. Stovall, 742 F.3d 642, 644-45 (6th Cir. 2014) (citing Greene, 565 U.S. at 38).

The AEDPA standard is difficult to meet "because it was meant to be." Harrington v. Richter, 562 U.S. 86, 102 (2011); see Burt v. Titlow, 134 S. Ct. 10, 16 (2013); Metrish v. Lancaster, 569 U.S. 351, 357-58 (2013); Cullen v. Pinholster, 563 U.S. 170, 181 (2011). Indeed, "habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error corrections through appeal." Harrington, 562 U.S. at 102-03 (citation and internal quotation omitted); see Woods v. Donald, 135 S. Ct. 1372, 1376 (2015).

Under AEDPA, 28 U.S.C. § 2254(d):

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

    (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

    (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

Ayala, 135 S. Ct. at 2198; see also White v. Wheeler, 136 S. Ct. 456, 460 (2015) (explaining that the Supreme Court, "time and again, has instructed that AEDPA, by setting forth necessary predicates before state-court judgments may be set aside, 'erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court.') (internal citation omitted).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in United States Supreme Court cases, or if it decides a case differently than the United States Supreme Court has done on a set of materially indistinguishable facts. Bell, 535 U.S. at 694 (citing Williams, 529 U.S. at 405-06). The court may grant relief under the "unreasonable application" clause "if the state court correctly identifies the governing legal principle from United States Supreme Court decisions but unreasonably applies it to the facts of the particular case. Id. A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." Williams, 529 U.S. at 411; accord Bell, 535 U.S. at 699. Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." Williams, 529 U.S. at 409. "[R]elief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." White v. Woodall, 134 S. Ct. 1697, 1706-07 (2014) (quoting Harrington, 562 U.S. at 103).

## V.    DISCUSSION

### A.  Ineffective Assistance of Counsel

#### 1.  Legal Standard

Petitioner alleges that his trial counsel was ineffective for a number of reasons.    In Strickland v. Washington, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-part test by which to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove:  (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.  A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Id. at 689.  The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy.  Id. (citing Michel v. Louisiana, 350 U.S. 91, 101 (1955)); see also Nagi v. United States, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).  The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance."  Strickland, 466 U.S. at 690.  Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment.  Id. at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of Strickland under § 2254(d), the deferential standard of Strickland is "doubly" deferential.  Harrington, 562 U.S. at 105 (citing Mirzayance, 556 U.S. at 123); see also Titlow, 134 S. Ct. at 13; Cullen, 563 U.S. at 189; Moore, 562 U.S. at 122.   In those

circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard."  <u>Id.</u>; <u>Jackson v. Houk</u>, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a <u>Strickland</u> claim in the context of habeas and AEDPA . . . .") (citing <u>Richter</u>, 562 U.S. at 101-02).

With these legal principles in mind, the Court considers each of the Petitioner's claims.

### 2.  Ineffective Assistance of Counsel:  Analysis

#### a.   Failure to File a Motion to Suppress

Petitioner contends that his counsel was ineffective for failing to move to suppress the search warrant executed at his residence on May 14, 2010.  Petitioner alleges that the search warrant was infirm because the affidavit in support of it failed to establish probable cause.  Specifically, Petitioner contends that the officers executing the search warrant had never conducted any controlled buys from him and did not conduct any surveillance on his residence before obtaining the search warrant.  Further, Petitioner contends that the officers misled the issuing judge by stating that the confidential informant (CI) had made a recent purchase from Petitioner and the officers failed to establish that the CI was credible and reliable.  Respondent argues that this claim is partially procedurally defaulted and without merit.  Respondent contends that Petitioner failed to raise the issue of the CI's credibility and reliability in the state court and, as such, he cannot raise this claim here.  With respect to the remaining issues, Respondent contends that the state court reasonably denied Petitioner relief.

To the extent that this claim is procedurally defaulted, the Court ignores the default and considers the claim on the merits.  <u>See</u>  28 U.S.C. § 2254(b)(2) ("An application for a writ of

habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State"); see also Lambrix v. Singletary, 520 U.S. 518, 525 (1997) ( recognizing that "[j]udicial economy might counsel giving the [other merits] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."), Hudson v. Jones, 351 F.3d 212, 215-16 (6th Cir. 2003) (noting that where the procedural default issue raises more questions than the case on the merits, the court may assume without deciding that there was no procedural default or that the petitioner could show cause and prejudice for that default.)

The TCCA considered Petitioner's claim that there was no probable cause for the warrant as follows:

> The Petitioner . . . argues that he was prejudiced by trial counsel's decision to not file a motion to suppress evidence obtained when the Petitioner's house was searched. More specifically, the Petitioner contends that counsel's actions led to a "failure to preserve for appeal critical suppression issues . . . ." The post-conviction court summarized the Petitioner's argument regarding the motion to suppress as follows:

>> [The] Petitioner testified that, in his opinion, the search warrant failed to state probable cause because (1) at his preliminary hearing he heard the detective testify that drugs were not logged into evidence since [the] Petitioner was not charged with sale of drugs and (2) no nexus was established because the police did not see any traffic or testify [that] the residence [was] in a drug area.

> Trial counsel testified that she reviewed the search warrant but found no legal basis under which to contest probable cause, and the post-conviction court found that the Petitioner "provided no legal basis for suppression" at the post-conviction hearing. The record does not preponderate against the post-conviction court's findings. The Petitioner has failed to establish that a motion to suppress would have been granted and that it would have altered the course of his trial. The Petitioner is not entitled to relief on this ground.

Washington II, 2016 WL 5266620, at *7.

The "failure to file a suppression motion does not constitute *per se* ineffective assistance of counsel." Kimmelman v. Morrison, 477 U.S. 365, 384 (1986). Where a petitioner alleges his counsel was ineffective for failing to file a motion to suppress, he "must . . . prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." Henness v. Bagley, 644 F.3d 308, 317–18 (6th Cir. 2011)(quoting Kimmelman, 477 U.S. at 375; see also Adams v. Bradshaw, 484 F.Supp.2d 753, 777 (N.D. Ohio 2007)(In order to succeed on the prejudicial aspect of a claim of ineffective assistance of counsel for failure to file a motion to suppress, a defendant must also prove that the motion is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence)(citing Kimmelman, 477 U.S. at 375 (1986)); Griffin v. Warden, Noble Correctional Institution, No. 2:14-cv-00857, 2016 WL 1090960, at *11-12 (S.D. Ohio March 21, 2016)(no prejudice under Strickland based on counsel's failure to file a motion to suppress evidence where the record indicates that the motion could not have succeeded).

In Tennessee, probable cause for issuance of a warrant is established by presenting "a sworn and written affidavit" to the magistrate. State v. Saine, 297 S.W.3d 199, 205-06 (Tenn. 2009); see also State v. Henning, 975 S.W.2d 290, 294 (Tenn. 1998). "To ensure that the magistrate exercises independent judgment, the affidavit must contain more than mere conclusory allegations by the affiant." Henning, 975 S.W.2d at 294. The affidavit must include facts from which the neutral and detached magistrate may determine, upon examining the affidavit in a commonsense and practical manner, whether probable cause exists. State v. Smotherman, 201 S.W.3d 657, 662 (Tenn. 2006); Henning, 975 S.W.2d at 294. When the

affidavit seeks to establish probable cause for a search warrant, it must "set forth facts from which a reasonable conclusion might be drawn that the evidence is in the place to be searched." State v. Smith, 868 S.W.2d 561, 572 (Tenn. 1993). In other words, the affidavit must demonstrate a nexus between the criminal activity, the place to be searched, and the items to be seized. Saine, 297 S.W.3d at 206 (citing State v. Reid, 91 S.W.3d 247, 273 (Tenn. 2002).) Although a nexus between the place to be searched and the items to be seized must be established, unlike an affidavit in support of an arrest warrant, an affidavit seeking issuance of a search warrant need not implicate a particular person in the crime under investigation. See Zurcher v. The Stanford Daily, 436 U.S. 547, 556 (1978); United States v. Burney, 778 F.3d 536, 540 (6th Cir. 2015).

An affidavit need not reflect the direct personal observations of the affiant. Henning, 975 S.W.2d at 294. The reliability of hearsay information included in an affidavit is evaluated differently, however, depending upon its source. State v. Williams, 193 S.W.3d 502, 507 (Tenn. 2006). If the source of the information is a law enforcement officer, "[n]o special showing of reliability is necessary." Smotherman, 201 S.W.3d at 663 (citing Ventresca, 380 U.S. at 111, 85 S.Ct. 741). But this presumption of reliability applies only if the affidavit states that the "information [was] provided by other officers." Id. (citing United States v. Kirk, 781 F.2d 1498, 1505 (11th Cir. 1986)). By contrast, no presumption of reliability applies to information supplied by an unknown informant or an informant from the "criminal milieu." Smotherman, 201 S.W.3d at 662 (citing Williams, 193 S.W.3d at 507; Jacumin, 778 S.W.2d at 436). In such circumstances, the affidavit must establish both the criminal informant's basis of knowledge and his or her veracity or credibility. Williams, 193 S.W.3d at 507 (citing Jacumin, 778 S.W.2d at 436; State v. Cauley, 863 S.W.2d 411, 417 (Tenn. 1993)).

When the search warrant issued, the Tennessee state courts, applied the Aguilar/Spinelli

two-prong test for determining whether the affidavit sufficiently established probable cause for

the issuance of a search warrant. Under that test, "the affidavit must include facts from which

the magistrate may determine the informant's "basis of knowledge" and "veracity" or credibility,

and if the information provided fails to establish either prong, corroborating evidence may make

up the deficit. State v. Tuttle, 515 S.W.3d 282, 302 (Tenn. 2017)(citations omitted).[2] The first

prong of the Aguilar/Spinelli test requires the court to consider the informant's basis of

knowledge. "Generally speaking, facts and circumstances indicating that the information came

from an informant who had obtained the information first [-] hand or by personal observation

will satisfy this prong." Tuttle, 515 S.W.3d at 302. The second prong of the test, veracity or

credibility, "may be satisfied either by (1) demonstrating the informant's credibility or (2) by

showing that the information is reliable." Id. In other words, "the affiant must provide some

concrete reason why the magistrate should believe the informant," although the "requisite

volume or detail of information needed to establish the informant's credibility is not particularly

great." Id.

In the affidavit in support of the search warrant Detective Carter declared that the CI

called Petitioner and arranged to purchase cocaine. (Doc. No. 15-15 at Page ID# 618.) After he

searched the CI for "contraband" and took away all of the CI's personal money, Detective Carter

gave the CI "previously photocopied buy money" and equipped the CI with an "electronic

listening device." (Id.) Detective Carter personally drove the CI to Petitioner's residence, he

saw the CI meet with Petitioner, and he saw the CI and Petitioner "engage[ ] in a hand to hand

---

[2] The Tennessee Supreme Court recently concluded that lower courts must use a "totality-of-the-circumstances analysis for determining whether an affidavit establishes probable cause for issuance of a [search] warrant." State v. Tuttle, 515 S.W.3d 282, 308 (Tenn. 2017).

transaction . . . that was consistent with a narcotics deal." (Doc. No. 15-15 at Page ID# 618.) The CI then returned to Detective Carter's vehicle and immediately gave Detective Carter a "white paper filled with white rock substances." (Id.) The substances field tested positive for cocaine. (Id.) Detective Carter searched the CI for "contraband" once more and found none. (Id. at Page ID# 619.) Detective Carter declared that he knew that the CI was "reliable from past information provided." (Id. at Page ID# 619.) Detective Carter also declared that the CI was "familiar with said drug from past exposure and experience" and the "CI has given information in the past which has resulted in the lawful recovery of illegal narcotics." (Id.)

Trial counsel testified that she reviewed the search warrant, but did not find any legal basis for filing a motion to suppress. (Doc. No. 15-14 at Page ID ## 594, 598-99) The post-conviction court reviewed the affidavit in support of the search warrant[3] and found credible trial counsel's testimony that there was no legal basis to suppress the search warrant. (Doc. No. 15-13 at Page ID# 530-31.) Nevertheless, Petitioner alleges that counsel was ineffective for failing to move to suppress the search warrant because the search warrant failed to establish probable cause. Specifically, Petitioner alleges that the affidavit in support of the search warrant was insufficient to establish probable cause because (1) the officers executing the search warrant had never conducted any controlled buys from him, (2) the officers executing the warrant did not conduct any surveillance on his residence before obtaining the search warrant and (3) the officers failed to establish that the CI was credible and reliable.[4]

---

[3] It appears that only two pages of the affidavit in support of the search warrant were given to the post-conviction court to review. Those two pages are also the only evidence in the record before this Court.

[4] Petitioner contends that the CI was a neighbor of his named Anthony Williams. Petitioner argues that the "officers had never used Anthony Williams as an informant prior to this case, had "little' information about him, and failed to corroborate the information he provided prior to obtaining the warrant." (Doc. No. 1 at Page ID# 6.)

Petitioner's conclusory and unsupported allegations are insufficient to establish that the search warrant was issued without probable cause. Detective Carter's affidavit plainly satisfies the <u>Aguilar/Spinelli</u> test and rebuts the Petitioner's arguments. Detective Carter personally observed the CI buying drugs from Petitioner with "previously photocopied buy money." Additionally, Detective Carter attested to the credibility and reliability of the CI because Detective Carter knew the CI and had obtained information from the CI before that had resulted in the recovery of illegal drugs. The state court reasonably concluded that there was no legal basis to suppress the search warrant. As a result, trial counsel was not ineffective for failing to file a motion to suppress the search warrant because such a motion was unlikely to be successful. <u>See</u> <u>Rodriguez v. Warden, Southern Ohio Correctional Facility</u>, 940 F.Supp.2d 704, 716 (S.D. Ohio 2013)(failure to file a motion to suppress does not constitute constitutionally ineffective assistance of counsel where there is no reasonable likelihood that the motion would have succeeded.) Petitioner is not entitled to relief on this claim.

      b.  <u>Failure to Request a Copy of the Second CD and Failing to File a Motion to Impeach the Confidential Informant</u>

Petitioner alleges that trial counsel was ineffective for failing to obtain a copy of a CD and failing to impeach the CI. Respondent contends that these claims are procedurally defaulted. The Court disregards the default and considers the merits of these claims. <u>See</u> 28 U.S.C. § 2254(b)(2).

While it is not entirely clear, it appears that Petitioner contends that there was a "second" CD, presumably the first CD was the recording of Detective Carter's conversation with Petitioner during the execution of the search warrant, that he had asked trial counsel to obtain, but she failed to do so. Petitioner alleges that the second CD "would have shown that there was

insufficient probable cause for the search warrant and that the exculpatory evidence could have been used to impeach the state's witness." (Doc. No. 1 at Page ID# 7.) As such, Petitioner contends that his counsel was ineffective for failing to obtain the second CD.

Beyond his bald assertions that information on the second CD would have subverted probable cause for the search warrant and would have been exculpatory, Petitioner does not state what was actually recorded on the second CD. He also fails to suggest how the information recorded on the second CD would have undermined probable cause for the search warrant, how it could have been used to impeach the CI and what on the CD he believed would have been exculpatory. As thoroughly explained above, Petitioner bears the burden of establishing that his counsel was ineffective. Strickland, 466 U.S. 689 (noting that the defendant bears the burden of overcoming the presumption that trial counsel's actions might be considered sound trial strategy. (citing Michel v. Louisiana, 350 U.S. 91, 101 (1955)). Petitioner has not met this burden. Petitioner has not established what was on the second CD or how the information on the second CD might have helped his case. As a result, Petitioner has failed to produce any evidence to demonstrate that trial counsel was deficient for failing to obtain the second CD. Petitioner is not entitled to relief on this claim.

### c. Failure to File a Motion to Recuse the Trial Judge

Petitioner contends that his trial counsel was ineffective because she failed to file a motion to recuse the trial judge. Respondent argues that Petitioner is not entitled to relief on this claim. The TCCA considered this claim as follows:

> The Petitioner argues that trial counsel should have filed a motion asking the trial judge to be recused. The Petitioner asserts that because he was previously sentenced in the trial judge's court, the trial judge could not have been impartial while presiding over his case. Trial counsel testified at the post-conviction hearing

that she did not file a motion to recuse because she found no legal basis for the motion.

"A trial judge is not disqualified because that judge has previously presided over legal proceedings involving the same defendant." <u>State v. Reid</u>, 213 S.W.3d 792, 815 (Tenn. 2006) (citing <u>State v. Hines</u>, 919 S.W.2d 573, 578 (Tenn. 1995)).  The Petitioner has not proved by clear and convincing evidence that the trial court would have granted a motion to recuse or that the motion would have affected the course of his trial if the motion had been granted.  Therefore, the Petitioner is not entitled to relief on this ground.

<u>Washington II</u>, 2016 WL 5266620, at *6–7.

[D]ue process demands that the judge be unbiased.  <u>In re Murchison</u>, 349 U.S. 133, 136 (1955) ("A fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases." (emphasis added)).  Furthermore, a judge can and should be disqualified for "bias, [ ] a likelihood of bias[,] or [even] an appearance of bias."  <u>See</u> <u>Ungar v. Sarafite</u>, 376 U.S. 575, 588 (1964); <u>see</u> <u>also</u> <u>Murchison</u>, 349 U.S. at 136 ("[O]ur system of law has always endeavored to prevent even the probability of unfairness."); accord <u>Anderson v. Sheppard</u>, 856 F.2d 741, 746 (6th Cir.1988) (opining that due process "require[s] not only an absence of actual bias, but an absence of even the appearance of judicial bias").

But, it is also clear that judicial disqualification based on a likelihood or an appearance of bias is not always of constitutional significance; indeed, "most matters relating to judicial disqualification d[o] not rise to a constitutional level."  <u>Fed. Trade Comm'n v. Cement Inst.</u>, 333 U.S. 683, 702 (1948) (citing <u>Tumey v. Ohio</u>, 273 U.S. 510, 523 (1927) ("All questions of judicial qualification may not involve constitutional validity."); <u>see</u> <u>also</u> <u>Bracy v. Gramley</u>, 520 U.S. 899, 904 (1997) ("Of course, most questions concerning a judge's qualifications to hear a case are not constitutional ones, because the Due Process Clause . . . establishes a constitutional floor, not a

uniform standard. Instead, these questions are, in most cases, answered by common law, statute, or the professional standards of the bench and bar."). There are two types of cases in which the Supreme Court has held that something less than actual bias violates constitutional due process – (1) those cases in which the judge "has a direct, personal, substantial pecuniary interest in reaching a [particular] conclusion," Tumey, 273 U.S. 523 (subsequently expanded to include even indirect pecuniary interest); and (2) certain contempt cases, such as those in which the "judge becomes personally embroiled with the contemnor," Murchison, 349 U.S. at 141 (subsequently clarified to involve cases in which the judge suffers a severe personal insult or attack from the contemnor). The Supreme Court has also identified four types of cases that, although they present prudent grounds for disqualification as a matter of common sense, ethics, or "legislative discretion," generally do not rise to a constitutional level-"matters of [1] kinship, [2] personal bias, [3] state policy, [and][4] remoteness of interest." Tumey, 273 U.S. 523; accord Aetna Life Ins. Co. v. Lavoie, 475 U.S. 813, 820 (1986).

Petitioner testified at the post-conviction hearing that he thought the trial judge could not be fair because she had previously sentenced Petitioner, because the appellate court determined that the trial judge erred in sentencing Petitioner, apparently in connection with another case, and because the trial judge failed to hear a motion to withdraw a guilty plea in another of Petitioner's cases, although it is not clear why the motion was not heard. (Doc. No. 15-14 at Page ID# 578-79.) Additionally, Petitioner testified that the trial judge could not be fair because while he was in her courtroom on another matter, the attorney representing him uttered a racial slur. (Id.) Plainly, Petitioner does not argue that the trial judge had a "direct, personal, substantial pecuniary interest in reaching a [particular] conclusion," Tumey, 273 U.S. 523. Nor does he argue that the trial judge was biased in any way recognized by the Supreme Court as

constitutionally significant. As a result, he cannot establish that his trial counsel was deficient for not filing a motion to recuse the trial judge. See Smith v. Bradshaw, 591 F.3d 517, 523 (6th Cir. 2010) (recognizing that counsel's failure to make a frivolous or meritless motion does not constitute ineffective assistance of counsel.)

### d. Failure to Thoroughly Investigate the Petitioner's Case

Petitioner alleges that his trial counsel was ineffective because she failed to thoroughly investigate the case and prepare for trial. Specifically, he alleges that trial counsel failed to meet with him to discuss the trial, that trial counsel only met with him before trial and that trial counsel never informed him that he could face 20 years' imprisonment if convicted. Additionally, Petitioner alleges that trial counsel never communicated with him regarding strategies and decision, nor did trial counsel advise Petitioner that he could receive a 30-year maximum sentence. Respondent contends that Petitioner is not entitled to relief on this claim.

The TCCA considered this claim as follows:

> The Petitioner alleges that trial counsel failed to update him on the status of his case, did not investigate potential defense witnesses, including "Rica" and the confidential informant, "developed no trial strategy, and raised no defense for [the Petitioner]." In particular, the Petitioner argues that trial counsel's failure to adequately inform him about the State's notice of enhancement that the Petitioner's maximum potential sentence at trial was thirty years. The Petitioner claims that, if he had understood before the trial that he could face a sentence of thirty years, he would have accepted the State's plea offer.

> Trial counsel testified at the post-conviction hearing that she spoke with the Petitioner at court appearances and frequently asked him to meet at her office. When trial counsel received the plea offer from the State, she discussed the offer with the Petitioner along with the Petitioner's Range III offender status and his possible sentence if he was convicted at trial. Trial counsel also testified that she spoke with "Rica" and determined that she would not be a credible witness and would likely perjure herself on the stand. Trial counsel did not call the confidential informant at trial because she did not want to elicit testimony that could have exposed the Petitioner to additional criminal liability.

The post-conviction court found that the Petitioner had the ability to contact trial counsel after his arraignment and that the Petitioner also conceded that he met with counsel at his ten court dates leading up to trial. Additionally, the post-conviction court found that trial counsel reviewed discovery with the Petitioner before trial and that the Petitioner conceded at the hearing that he had discussed the State's plea offer with counsel. The post-conviction court found trial counsel's testimony credible and found that "[n]othing in the record indicates that [trial counsel] failed to meet with the Petitioner and keep him informed of the proceedings." The evidence does not preponderate against the post-conviction court's findings on the Petitioner's communication with trial counsel and his understanding of the plea offer; therefore, the Petitioner has not established that he was prejudiced by trial counsel's communication of the plea offer. Lafler v. Cooper, 132 S. Ct. 1376, 1385 (2012) (holding that "a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court . . ., that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed" to establish prejudice).

Moreover, the evidence does not preponderate against the post-conviction court's findings regarding communication between trial counsel and the Petitioner. Regarding the Petitioner's claim that trial counsel failed to prepare a defense strategy, trial counsel testified that she discussed defending the charge on the basis that the Petitioner was a drug user, and the post-conviction court credited her testimony.

In cases where a petitioner contends that trial counsel failed to present a witness in support of the petitioner's defense, the petitioner must present such witness at the post-conviction hearing. Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). Neither a trial nor an appellate judge can speculate as to whether that witness's testimony would have been favorable to the defense. Id. Therefore, the petitioner must "produce a material witness who . . . would have testified favorably in support of his defense if called [at trial]. Otherwise, the petitioner fails to establish the prejudice requirement mandated by Strickland v. Washington." Id. at 758. The Petitioner did not call "Rica" or the confidential informant at the post-conviction hearing; therefore, the Petitioner has not established that he was prejudiced by trial counsel's decision to not call these witnesses at trial. The Petitioner is not entitled to relief.

Washington II, 2016 WL 5266620, at *7–8.

Under the first prong of the Strickland test, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688. A petitioner asserting a claim of ineffective assistance must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." Id. at 690. The reasonableness of counsel's performance must be evaluated "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." Kimmelman, 477 U.S. at 381 (quoting Strickland, 466 U.S. at 689).

The second prong of the Strickland test requires Petitioner to show that counsel's deficient performance prejudiced the defense. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Strickland, 466 U.S. at 691. In order to prevail on a claim of prejudice, a petitioner must show "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695.

At the post-conviction hearing, Petitioner conceded that he met with counsel at his first court appearance, at every appearance thereafter and that he had at least ten court appearances. (Doc. No. 15-14 at Page ID## 552, 572-73.) He conceded that he went over the discovery with counsel, that counsel called him the Sunday before trial to discuss the case with him and that counsel told him three times that the state had offered a 20 year sentence in exchange for a guilty plea. (Id. at Page ID## 557-59, 562.) Petitioner also conceded that when he received the discovery from counsel he also received the letter that the state had sent to counsel explaining that because of Petitioner's criminal record he was facing 30 years at trial, so the state felt that 20 years was a reasonable offer. (Id. at Page ID# 563.) Finally, Petitioner alleges that trial counsel

did not reveal her trial strategy, but he testified at the post-conviction hearing that trial counsel explained to him that her strategy was to pursue a conviction for a lesser included offense. (<u>Id.</u> at Page ID# 576.)

Trial counsel's testimony mostly amplified Petitioner's testimony. Trial counsel testified that when Petitioner was out on bond she asked him many times to come to her officer, "almost to the point of begging [him] to come to [her] office." (<u>Id.</u> at Page ID# 590.) She testified that she discussed the discovery with Petitioner before trial and more than once, she explained to Petitioner that he qualified as a range 3 offender because of his criminal history, she explained the nature of a drug free zone charge and conveyed the state's plea offer. (<u>Id.</u> at Page ID# 591-92.) She talked with Petitioner about possible defenses and he gave significant input, including suggesting that the best defense was to argue that he was simply a drug user, the defense that was actually used at trial. (<u>Id.</u> at Page ID# 592-93.) Trial counsel contacted Petitioner's former girlfriend. (<u>Id.</u> at Page ID# 594.) She conveyed all of the State's plea offers, but believed that the State only made one offer, and shared the State's offer with Petitioner and they discussed it. (<u>Id.</u> at Page ID# 601.)

The state court reasonably determined that trial counsel sufficiently communicated with Petitioner about his case. Indeed, Petitioner's own testimony at the post-conviction hearing refutes his allegations before this Court. For example, Petitioner alleges that counsel failed to meet and confer with him, but he testified at the post-conviction hearing that he and trial counsel met at least 10 times in connection with each of his court appearances. (Doc. No. 15-14 at Page ID## 552, 572-73.) Likewise, Petitioner alleges that trial counsel failed to explain his maximum potential sentence, but at the post-conviction hearing Petitioner testified that trial counsel sent him a letter from the prosecutor explaining that Petitioner would be eligible for a 30 year

sentence if he proceeded to trial.  (Id. at Page ID# 563.)  Petitioner fails to identify anything that trial counsel reasonably should have, but did not do, in defending his case.  Nor does he suggest how anything that trial counsel did, or did not do, prejudiced the outcome of his trial.  Petitioner is not entitled to relief on this claim.

> e.  Failure to Request a Jury Instruction on Facilitation as a Lesser Included Offense

Petitioner alleges that his trial counsel was ineffective for failing to request a jury instruction on facilitation as a lesser included offense.  Respondent argues that this claim is procedurally defaulted and even if it were not, the claim is without merit.  The Court ignores the default and considers the claim on the merits.  See 28 U.S.C. § 2254(b)(2).

The Sixth Circuit Court of Appeals, sitting en banc, has held that the failure to give an instruction on a lesser-included offense, even when requested by counsel, is not of the "character or magnitude which should be cognizable on collateral attack."  Bagby v. Sowders, 894 F.2d 792, 797 (6th Cir. 1990) (en banc).  The Bagby Court held that failure to instruct on lesser-included offenses in a noncapital case is reviewable in a habeas corpus action only if the failure results in a miscarriage of justice or constitutes an omission inconsistent with the rudimentary demands of fair procedure.  Id.; accord Tegeler v. Renico, 253 F. App'x 521, 524 (6th Cir. 2007); Todd v. Stegal, 40 F. App'x 25, 28-29 (6th Cir. 2002).  Shortly after the Sixth Circuit decision in Bagby, the Supreme Court emphasized that even where a jury instruction is allegedly incorrect under state law, there is no basis for habeas relief.  Estelle v. McGuire, 502 U.S. 62, 71-72 (1991) (citing Marshall v. Lonberger, 459 U.S. 422, 438 n. 6 (1983)).  Instead, the only question on habeas review is "whether the ailing instruction by itself so infected the entire trial

that the resulting conviction violates due process." Id. at 72 (quoting <u>Cupp v. Naughten</u>, 414 U.S. 141, 14 (1973)), cited in <u>Todd</u>, 40 F. App'x at 29.

Here, there is no miscarriage of justice or fundamental defect in due process. Under Tennessee law, "[a] person is criminally responsible for the facilitation of a felony, if, knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility under § 39-11-402(2), the person knowingly furnishes substantial assistance in the commission of the felony." Tenn. Code Ann. § 39-11-403(a). Petitioner baldly asserts that "the evidence presented warranted a facilitation instruction." (Doc. No. 1 at Page ID# 25.) However, Petitioner does not offer any evidence to suggest that a facilitation instruction was warranted. Furthermore, "defendants do not have a constitutional right to a lesser-included-offense instruction in non-capital cases." <u>McMullan v. Booker</u>, 761 F.3d 662, 672 (6th Cir. 2014) (citing <u>Campbell v. Coyle</u>, 260 F.3d 531, 541 (6th Cir.2001)); accord <u>Calloway v. Montgomery</u>, 512 F.3d 940, 944 (7th Cir.2008) (holding no due-process violation by refusing to instruct on involuntary manslaughter, even when petitioner was convicted of voluntary manslaughter, because "on this issue in a noncapital case, there is no clearly established Supreme Court precedent"); <u>Dockins v. Hines</u>, 374 F.3d 935, 938 (10th Cir. 2004) (adhering to a "rule of automatic non-reviewability" on habeas "for claims based on a state court's failure, in a non-capital case, to give a lesser included offense instruction."). Thus, this claim is not a basis for habeas relief. <u>Todd</u>, 40 F.App'x at 28 (citing <u>Estelle</u>, 502 U.S. at 71-72.) As such, trial counsel cannot have been ineffective for failing to request a facilitation instruction. Petitioner is not entitled to relief on this claim.

f.   Failure to Attack the Validity of the Indictment

Petitioner alleges that the charging indictment was invalid because it charged him with the sale or delivery of cocaine, thereby making it duplicitous.  Respondent contends that this claim is procedurally defaulted.  The Court disregards the procedural default and considers the claim on the merits. See 28 U.S.C. § 2254(b)(2).

"[I]t is well established that allegations of technical defects in the indictment fail to state a claim for federal habeas corpus relief." Payne v. McCarthy, No. 5:15-cv-2253, 2016 WL 367997, at *1 (N.D. Ohio Jan. 29, 2016); see also Knewel v. Egan, 268 U.S. 442, 446 (1925); Burrows v. Engle, 545 F.2d 552 (6th Cir. 1976); Kimbro v. Bomar, 333 F.2d 755 (6th Cir. 1964). The Sixth Circuit has held that beyond notice, a claimed deficiency in a state criminal indictment is not cognizable on federal collateral review.  Roe v. Baker, 316 F.3d 557 (6th Cir.2002). "An indictment which fairly but imperfectly informs the accused for which he is to be tried does not give rise to a constitutional issue cognizable in habeas proceedings." Mira v. Marshall, 806 F.2d 636 (6th Cir.1986); Blake v. Thompson, 434 U.S. 1038 (1978); Blake v. Morford, 563 F.2d 248, 250 (6th Cir. 1977); Combs v. Tennessee, 530 F.2d 695, 698–99 (6th Cir. 1976).

Petitioner contends that because, in his view, the indictment charged him with two separate crimes, intent to sell or intent to deliver, the indictment violated state law.  In support of this contention, Petitioner cites to two state law cases which stand for the proposition that each crime for which the Petitioner is charged must be stated in a separate count.  See State v. Angela E. Isabell, No. M2002-00584-CCA-R3-CD, 2003 WL 21486982 (Tenn.Crim.App. June 27, 2003) (noting that a defendant may not be charged with two or more distinct and separate offenses in a single count indictment); State v. Gillam, 901 S.W.2d 385, 389 (Tenn. 1973) (stating "all crimes arising from the same incident that are not lesser included offense of another

crime charged in the indictment must be charged in separate counts.) At the post-conviction

hearing, the trial court amply explained to Petitioner the error in his duplicitous indictment

theory.

> THE WITNESS (Petitioner): I was here. I knew that -- the instructions given to the jury was you had to find me guilty unanimously of either attempt to sale or attempt to deliver. Not both.
>
> THE COURT: No, that's not what you were charged with.
>
> THE WITNESS: I was charged with possession with intent to sell or deliver.
>
> THE COURT: Right.
>
> THE WITNESS: Or it cannot be possession of a controlled substance with intent to sell or deliver because it does not give the jury a chance to --
>
> THE COURT: Okay. All right. So you're saying it's different from sale or delivery. Do you realize the case law is not on your side on that issue? You're charged with possession. It's the possession. Your intent was to either sell it or deliver it. The possession is the offense with intent to sell or deliver. If you had been charged with a sale, that would have been an issue or if you had been charged with a delivery of a controlled substance. That the jury has to choose between. But the possession is the possession with intent to sell or deliver it.
>
> THE WITNESS: Okay.
>
> THE COURT: That doesn't have to be broken down to the jury.
>
>                           \*   \*   \*
>
> THE WITNESS: They found me guilty as charged in the indictment, which was not – which would have been possession with intent to sell or deliver.
>
> THE COURT: Right. That's what they found you guilty of.
>
> THE WITNESS: Right. Which --
>
> THE COURT: Within a thousand feet of a recreational center or park.
>
> THE WITNESS: Yes. But if you go to duplicity, it stated that --
>
> THE COURT: Duplicity has to do with a sale or it has to do with the delivery. It does not apply to the possession.

THE WITNESS: Right. That's what my indictment should have read, but my indictment didn't read that. I have a copy of my indictment, which means that I should have been -- if my indictment would have read count one, sale of crack cocaine, Count 2 , delivery of crack cocaine, then my indictment would not be faulty. But my indictment says possession of a controlled substance with intent to sale or deliver.

THE COURT: That's what you went to court on. That's what the charge was.

THE WITNESS: But it's not right. It's faulty.

THE COURT: Well, you were charged with possession with intent to sell or deliver point five grams or more of a substance containing cocaine.

THE WITNESS: Right.

THE COURT: That's what the jury was charged with.

THE WITNESS: Okay.

THE COURT: And the lesser offense of attempt. Okay. There's nothing wrong with that, Mr. Washington. Do you understand that? You were not charged with a sale. You were not charged with a delivery. You were charged with a possession with intent to sell or deliver.

(Doc. No. 15-14 at Page ID# 582-85.)

As is clear from the foregoing, the post-conviction court went to great lengths to explain to Petitioner why the indictment was not duplicitous. That he has failed to understand, or is unwilling to accept, that the indictment was not flawed does not create a habeas claim where none exists. The indictment gave Petitioner ample notice of the crimes with which he was being charged. (Doc. No. 15-1 at Page ID# 70-73). However, even if the indictment were flawed, the propriety of the indictment is a matter of state law and is not redressable in federal habeas proceedings. As a result, trial counsel cannot be ineffective for not raising an issue regarding the alleged deficiency of the indictment.

**B. Insufficiency of the Evidence**

Petitioner alleges that the evidence was insufficient to support the jury's verdict finding him guilty of possession with the intent to sell or deliver more than .5 grams of cocaine in a drug-free zone. Respondent argues that Petitioner is not entitled to relief on this claim.

Applying the standard set forth in Jackson v. Virginia, 443 U.S. 307, 319 (1979), the TCCA considered this claim as follows:

> The Defendant contends that the evidence is insufficient to support his conviction because the proof shows only possession for personal use, not possession with the intent to sell or deliver. The State counters that the evidence is sufficient. We agree with the State.
>
> Our standard of review when the sufficiency of the evidence is questioned on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). We do not reweigh the evidence but presume that the trier of fact has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the State. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn.1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn.1978). Questions about witness credibility are resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn.1997).
>
> "A crime may be established by direct evidence, circumstantial evidence, or a combination of the two." State v. Sutton, 166 S.W.3d 686, 691 (Tenn.2005) (quoting State v. Hall, 976 S.W.2d 121, 140 (Tenn.1998)). Circumstantial evidence alone may be sufficient to support a conviction. State v. Richmond, 7 S.W.3d 90, 91 (Tenn.Crim.App.1999); State v. Buttrey, 756 S.W.2d 718, 721 (Tenn.Crim.App.1988). The standard of proof is the same, whether the evidence is direct or circumstantial. State v. Dorantes, 331 S.W.3d 370, 379 (Tenn.2011). Likewise, appellate review of the convicting evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.' "Id. (quoting State v. Hanson, 279 S.W.3d 265, 275 (Tenn.2009)).
>
> "It is an offense for a defendant to knowingly . . . . [p]ossess a controlled substance with intent to manufacture, deliver or sell the controlled substance." T.C.A. § 39–17–417(a)(4) (2010) (amended 2012). A violation of this nature involving cocaine weighing one-half gram or more is a Class B felony. Id. at

(c)(1). A defendant who commits the offense in a drug-free zone, which includes property within 1000' of a public park, is subject to additional fines and may not be released from prison due to sentence reduction credits before serving at least the minimum sentence for his sentencing range. Id. § 39–17–432 (2010).

Viewed in the light most favorable to the State, the record reflects that the Defendant had 3.9 grams of crack cocaine and seven-tenths of one gram of powder cocaine in his pocket. The crack cocaine was broken into small pieces with street values ranging from $10 to $30. Digital scales like those used by drug dealers were inside a car parked outside the house. When asked who should be charged for the marijuana found in the same car, the Defendant said he should be charged. No crack pipe or other mechanism for smoking crack cocaine was recovered. The Defendant's home was within 1000' of a park. The evidence is sufficient to support the conviction, and the Defendant is not entitled to relief.

Washington I, No. M2011-02678-CCA-R3CD, 2012 WL 6115589, at *4 (Tenn. Crim. App. Dec. 10, 2012)

A § 2254 challenge to the sufficiency of the evidence is governed by the standard set forth in Jackson, 443 U.S. at 319, which is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." This standard of review recognizes the trier of fact's responsibility to resolve reasonable conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. Id. Issues of credibility may not be reviewed by the habeas court under this standard. See Herrera v. Collins, 506 U.S. 390, 401-02 (1993). Rather, the habeas court is required to examine the evidence supporting the conviction, in the light most favorable to the prosecution, with specific reference to the elements of the crime as established by state law. Jackson, 443 U.S. at 324 n.16; Allen v. Redman, 858 F.2d 1194, 1196-97 (6th Cir. 1988).

Moreover, because both the Jackson standard and AEDPA apply to Petitioner's claims, "'the law commands deference at two levels in this case: First, deference should be given to the

trier-of-fact's verdict, as contemplated by <u>Jackson</u>; second, deference should be given to the [state court's] consideration of the trier-of-fact's verdict, as dictated by AEDPA.'" <u>Davis v. Lafler</u>, 658 F.3d 525, 531 (6th Cir. 2011) (quoting <u>Tucker v. Palmer</u>, 541 F.3d 652, 656 (6th Cir. 2008)).

Petitioner was charged with one count of violating Tenn. Code Ann. §39-14-417 which makes it a crime to knowingly possess a controlled substance with intent to deliver or sell the controlled substance. Ample evidence was adduced at trial to the jury's verdict. David Kline testified regarding the map admitted into evidence that demonstrated that Petitioner's residence was located within 1000' feet of a park. (Doc. No. 15-2 at Page ID## 112-17.) Detective Carter testified regarding the execution of the warrant and finding two baggies, one with rock cocaine and one with powder cocaine, in Petitioner's pockets. (<u>Id.</u> at Page ID## 125-26.) He also testified that a black digital scale with cocaine residue was found inside a vehicle registered in Petitioner's mother's name and parked at the residence. (<u>Id.</u> at Page ID# 127.) Finally, he testified that no crack pipe was found during the search. (<u>Id.</u> at Page ID# 137.) Detective Williams' testimony corroborated Detective Carter's testimony. (<u>Id.</u>at Page ID## 157.) Detective Williams also testified that based on his experience "people who have 3 grams or more of crack or powder they're not smoking it, because if there were smoking it, it would be smoked." (<u>Id.</u> at Page ID# 158.) Special Agent John Scoot testified as an expert forensic chemist and confirmed that the drugs found were cocaine and he established that the rock cocaine found weight 3.9 grams and that the powder cocaine weight .7 grams. (<u>Id.</u> at Page ID# 161-164.) Finally, Lieutenant Mackall testified as an expert in narcotics investigations and explained how drug dealers typically operate and how the sell there goods. Lieutenant Mackall testified that in his experience anyone who was purely a drug users would not have a digital

scale, but that they would typically have a crack pipe. (Id.at Page ID# 177-78.) He also testified that he had never experienced anyone who was purely a user who had as much crack as was found on Petitioner. (Id.) When asked why a user would not have the quantity of drugs found on Petitioner, Lieutenant Mackall testified that based on his experience and from the experiences of people who he interviewed after arrest, "most of these people are addicted to this substance. An[d] normally when the buy it, they walk around the corner and they smoke it right then and there. They usually don't hold onto it for very long." (Id. at Page ID# 178.)

In addition to the testimony of the State's witnesses, the State introduced a tape recording of Petitioner's conversation with Detective Carter, which Detective Carter surreptitiously obtained during the execution of the search warrant. A transcript of the tape recording was also introduced in the record. (Doc. No. 15-3 at Page ID#252-60.) Petitioner conceded that marijuana found in one of the vehicles and the marijuana grinder found inside the residence belonged to him. His concession regarding ownership of the marijuana found inside the vehicle, placed him in the same vehicle in which the black scale with white powder, which tested positive for cocaine, was found.

Based on the record, the state court's finding that the evidence was sufficient to convict the Petitioner as charged was patently reasonable. Petitioner is not entitled to relief on this claim.

### C. The Trial Court erred in Sentencing the Petitioner

Petitioner claims that the trial court erred when it failed to give greater weight to mitigating factors and sentenced Petitioner to 30 years, the maximum for a Range III offender. Specifically, Petitioner contends that the trial court failed to consider that he was in a recovery program, that he was employed full time, that he had been employed on the same job for over a year and a half

and that he was "attempting to better himself." (Doc. No. 1 at Page ID# 16.) Respondent argues that this claim is procedurally defaulted and without merit. To the extent that this claim is procedurally defaulted, the Court ignores that default and considers the claim on the merits. See 28 U.S.C. §2254(b)(2).

The TCCA considered a similar sentencing claim as follows:

> The Defendant contends that the trial court erred in sentencing him to thirty years, the maximum within Range III. The State counters that the trial court correctly sentenced the Defendant. We conclude that the Defendant is not entitled to relief.

> In determining the proper sentence, the trial court must consider: (1) any evidence received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee, (7) any statement that the defendant made on his own behalf, and (8) the potential for rehabilitation or treatment. T.C.A. §§ 40–35–102, –103, –210 (2010); see State v. Ashby, 823 S.W.2d 166, 168 (Tenn.1991); State v. Moss, 727 S.W.2d 229, 236 (Tenn.1986). Appellate review of sentencing is for abuse of discretion. We must apply "a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." State v. Susan Renee Bise, —— S.W.3d ——, ——, No. E2011–00005–SC–R11–CD, slip op. at 29 (Tenn. Sept. 26, 2012).

> At the sentencing hearing, the parties did not offer testimony. The court received certified copies of the judgments for the following of the Defendant's prior convictions:

>> Attempted Sale of a Controlled Substance, Class C felony, March 25, 1993
>> Four Counts of Sexual Battery, Class E felony, March 25, 1993
>> Aggravated Assault, Class C felony, March 11, 1999
>> Possession of Less than one-half gram of Cocaine with Intent to Sell, Class C felony, March 11, 1999
>> Sale of Less than one-half gram of a Controlled Substance, Class C felony, June 29, 2000
>> Sale of More than one-half gram of Cocaine, Class B felony, September 6, 2005
>> Statutory Rape, Class E felony, May 23, 2005

The presentence report listed numerous other convictions, including misdemeanor drug offenses, motor vehicle and driver's license offenses, reckless endangerment, evading arrest, assault, criminal trespass, possession of a gambling device, gambling, resisting arrest, reckless driving, theft, and contributing to the delinquency of a minor. The Defendant was forty-five years old, and his extensive criminal history spanned his entire adult life. The Defendant had a G.E.D. and completed a substance abuse treatment program while incarcerated in 2006. He was employed at two jobs, a janitorial company and a tent and awning company. He had five children and had weekend visitation with two of them. His parole was revoked in 2007, and his probation was revoked in 1994.

The trial court noted its consideration of the relevant statutory and other factors. It found that the Defendant's sentence should be enhanced based upon his prior criminal history in addition to the offenses used to establish his Range III classification and his failure to comply with conditions of release into the community. See T.C.A. § 40–35–114(1), (8) (2010) (amended 2012). In mitigation, the court found that the Defendant's conduct neither caused nor threatened serious bodily injury. See id. § 40–35–113(1) (2010). In imposing the maximum sentence, the court noted the Defendant's criminal history of numerous offenses that included many felonies in addition to those used to establish his Range III classification.

The Defendant argues that the trial court improperly weighed the mitigating factor and failed to consider as additional mitigating proof his acceptance of responsibility for the marijuana and scales in the Hummer. See id. at (13). With regard to the Defendant's argument about the weight given to the mitigating factor the trial court applied, this court may not reweigh enhancement and mitigating factors relied upon by the trial court. State v. Carter, 254 S.W.3d 335, 344–45 (Tenn.2008). In any event, the court stated that it had considered the trial evidence in reaching its sentencing determination. Applying the presumption of reasonableness, we conclude that the Defendant has not shown an abuse of discretion in imposing a thirty-year sentence.

Washington I, 2012 WL 6115589, at *5–6.

Wide discretion is accorded a state trial court's sentencing decision. Claims arising out of that decision are not generally cognizable on federal habeas review, unless the petitioner can show that the sentence imposed exceeded the statutory limits or is wholly unauthorized by law. See Lucey v. Lavine, 185 F. Supp. 2d 741, 745 (E.D. Mich. 2001) (citing Haynes v. Butler, 825 F.2d 921, 923-24 (5th Cir. 1987)); see also Schwartz

v. Neal, 175 F.App'x. 265, 268-69 (10th Cir. 2006). Where Petitioner alleges only errors of state sentencing law, his claims are not cognizable on habeas review. See Estelle, 502 U.S. at 67–68; Pulley v. Harris, 465 U.S. 37, 41 (1984); Branan v. Booth, 861 F.2d 1507, 1508 (11th Cir.1988) ("federal courts cannot review a state's alleged failure to adhere to its own sentencing procedures.")

On March 31, 2011, prior to Petitioner's sentencing hearing, the prosecutor filed a Notice of Enhanced Punishment indicating that the State intended to seek to have Petitioner sentenced to an enhanced punishment under Tenn. Code Ann. § 40-35-106[5] because of Petitioner's numerous prior felony convictions. (Doc. No. 15-1 at Page ID## 78-79; see also Doc. No. 15-4 at Page ID# ) At the sentencing hearing, the parties agreed that Petitioner was a persistent offender and the trial court noted that Petitioner's persistent offender status made punishment range from twenty to thirty years. (Doc. No. 15-4 at Page ID## 268-69, 272-73.) The trial court also noted that the drug free zone law required Petitioner to serve the first twenty years of his sentence at 100%. (Id. at Page ID # 273.) The trial court considered "the relevant statutory and other factors" and sentenced Petitioner to thirty years. (Id. at Page ID# 272-73; see also Washington I, 2012 WL 6115589, at *5–6.) Petitioner does not offer any evidence to suggest that the trial court exceeded statutory limits in crafting his sentence nor does he suggest that his sentence was unauthorized by law. As such, Petitioner is not entitled to habeas relief on this claim.

---

[5] Section 40-35-106 defines the various categories that qualify a defendant as a multiple (or persistent) offender.

### D. The Cumulative Error Caused by Trial Counsel's Ineffective Assistance Prejudiced Petitioner

Petitioner alleges that the cumulative harm of trial counsel's ineffective assistance prejudiced him. Respondent argues that this claim is procedurally barred and without merit. To the extent this claim is procedurally barred, the Court ignores the bar and considers the claim on the merits. See 28 U.S.C. § 2254(b)(2)

> Lastly, the Petitioner contends that "[t]he cumulative harm of [trial counsel's] errors led to [the Petitioner] not taking a plea at trial, entering trial with no strategy or defense, failure to preserve for appeal critical suppression issues, and an appeal that did not serve his interests."
>
> The cumulative error doctrine recognizes that there may be many errors committed in trial proceedings, each of which constitutes mere harmless error in isolation but "have a cumulative effect on the proceedings so great as to require reversal in order to preserve a defendant's right to a fair trial." State v. Hester, 324 S.W.3d 1, 76 (Tenn. 2010). To warrant review under the cumulative error doctrine, there must have been more than one actual error during the trial proceedings. Id. at 77.
>
> This court has considered each of the Petitioner's allegations of deficient performance and resulting prejudice, and we have concluded that the Petitioner is not entitled to relief on any ground. Therefore, consideration of the cumulative effect of counsel's alleged errors is not necessary. See Howard G. Bruff v. State, No. E201302223-CCA-R3-PC, 2014 WL 6977734, at *11 (Tenn. Crim. App. Dec. 10, 2014) ("Having considered each of the petitioner's issues on appeal and concluded that he is not entitled to relief for any, we need not consider the cumulative effect of the alleged errors."), no perm app. filed. Therefore, the Petitioner is not entitled to relief on this ground.

Washington II, 2016 WL 5266620, at *8–9.

Under the AEDPA, a court only may grant habeas relief based on a misapplication of Supreme Court law. Bailey, 271 F.3d at 655. The Sixth Circuit repeatedly has stated that cumulative error claims are not cognizable on habeas review. "The Supreme Court has not held that constitutional claims that would not individually support habeas relief may be cumulated in order to support relief." Scott v. Elo, 302 F.3d 598, 607 (6th Cir. 2002); see also Keith v.

<u>Mitchell</u>, 455 F.3d 662, 679 (6th Cir. 2006); <u>Williams v. Anderson</u>, 460 F.3d 789, 816 (6th Cir. 2006). Because Petitioner's ineffective assistance of counsel claims are without merit, Petitioner cannot show that counsel's cumulative errors violated his constitutional rights. <u>See</u> <u>Seymour</u>, 224 F.3d at 557. Consequently, Petitioner is not entitled to relief on this claim.[6]

**VI    CONCLUSION**

For the foregoing reasons, the habeas corpus petition will be denied and this matter dismissed with prejudice.

The Court must issue or deny a certificate of appealability ("COA") when it enters a final order adverse to a § 2254 petitioner. Rule 11, Rules Gov'g § 2254 Cases. Petitioner may not take an appeal unless a district court judge issues a COA. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA may issue only if Petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A "substantial showing" is made when Petitioner demonstrates that "'reasonable jurist could debate whether (or, for that matter, agree that) the petition should have been resolved in a different matter or that the issues presented were "adequate to deserve encouragement to proceed further.'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336 (2003) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000).)

---

[6] To the extent that Petitioner alleges instances of ineffective assistance not previously considered by the Court, he fails to demonstrate that counsel was ineffective for the reasons alleged. For example, Petitioner alleges, for the first time in his cumulative error claim, that trial counsel was ineffective for failing to prepare Petitioner to testify at trial and for failing to file a motion to compel to require the State to disclose the CI and that Petitioner was not afforded a <u>Mormon</u> hearing. (Doc. No. 1 at Page ID# 12.) Petitioner entirely fails to substantiate these claims. Merely stating the ground upon which he seeks relief, is woefully inadequate to establish that Petitioner is entitled to relief. With respect to these additional claims, Petitioner has not met his burden of establishing that his counsel was ineffective. <u>Strickland</u>, 466 U.S. 689.

In this case, the issues raised in the petition do not merit further review. Thus, the Court will deny a COA. Petitioner may, however, seek a COA directly from the Sixth Circuit Court of Appeals. Rule 11(a), Rules Gov'g § 2254 Cases.

An appropriate order is filed herewith.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE